N.Y.U. v. Basso. We'll hear from counsel. May it please the Court. Good morning, Your Honor. Thank you for the treat today. My name is Michael Volpe and I'm with Venable LLP on behalf of defendant petitioner N.Y.U. We're here today requesting that the Court grant the 23F petition to allow an interlocutory appeal on a very important issue. These types of 23F petitions are covered by a particular standard that Your Honor mentioned in the Hevesi case following the Sumitomo analysis. And the 23F motion or petition, if you will, can be granted if the class certification here that occurred by the District Court, which we contend was in error, would terminate the litigation or there's been a substantial showing of a questionable decision by the District Court or there's an important legal question, a novel legal question that needs resolution. And there's a footnote in Sumitomo that indicates under special circumstances, these petitions can also be granted. So with that backdrop, I'd like to tell the Court why the petition should be granted in our opinion. When one reads the McLaughlin decision, the Hevesi decision that I've already mentioned, the Dungan v. Ivory Ridge school decision and the Cohn decision, we see that cases like this, which are effectively educational malpractice cases or educational misrepresentation cases, which are not recognized under New York law, have been repackaged, if you will, and there are tort claims or statutory claims that are being put forth to try to stay in the court and have an active litigation. So here what we have, since three of the claims have been dismissed, the implied covet of good faith and fair dealing and the general business law claims have been dismissed, we have tort claims, negligent misrepresentation, fraud, unjust enrichment, and the breach of contract, which is not in question because that is out of the class context here. With those three tort claims, we necessarily have a reliance proof issue. In other words, one of the issues that needs to be determined is whether or not there was the necessary reliance for each claim, and the plaintiffs would have to prove that reliance to move forward. Now let me just ask you, the key question I think for us is does this need immediate attention by this Court, not just whether it's a novel issue or not? There are a lot of novel issues that come up. The question is, is this something that the courts should decide now? And you're not claiming this is like what they call the death knell situation where your client would be forced to settle because of the potential damages in the case. This is not one of those cases, right? Well, it could be. It could be, Your Honor, because while the number here, the number of potential plaintiffs is not what we see in some other class actions. About 100, right? Pardon me? 300? 300 plus, yes. Yes, Your Honor. But it could be because what happens with the district court's decision here, which is particularly unclear, it really requires a trifurcation of the case. But what happens here is we're going to have three mini-trials on liability, on the individual claims, the class claims, and then maybe one or two damage phases. So it's either a try or four different proceedings. So it might result in exactly what Your Honor said. It might use a multibillion-dollar entity, right? No, it's not a multibillion-dollar case. I could never say that. Okay. And why would this issue potentially not get resolved in the district court through other means? If, for example, the district court determined that there was no special relationship, there are a lot of different ways this could still ultimately get resolved in your client's favor. Absolutely. It could get resolved on summary judgment. It could be certified at some point. The district court could change his mind. It could, Your Honor. But what's novel here is in the educational context, where under New York law, and in particular under the, I'll mispronounce it, but the Papaspiridocus case, educational malpractice is not recognized at all, why there's a novel question is this is really a repackaging of that type of claim. What's at issue here is very simple. The argument is there were misrepresentations made by the school respecting TISH Asia and respecting its relationship to TISH New York in the graduate film context. And that type of claim is typically dismissed on motion. Here the court decided not to dismiss it on a motion to dismiss. We've gone through tremendous discovery. And when one looks at the record, you see the district court's error in that the reliance that was testified to by the three named plaintiffs is completely different. So when you look at that, there's been substantial error by the district court, which is one of the ways that we believe the 23F petition can be properly granted. I would also submit to you, Your Honor, that the novel legal question that we've just talked about is presented by this case. And when you look at the McLaughlin case, and in particular the Dungan v. Ivy Ridge case, which is a school case, you will see that with that reliance requirement, a class action is not appropriate and certification was not appropriate here by the district court. I see that my time is up. If there are no other questions, thank you. May it please the Court, I have a motion from Giskins, Solitareff, and Anderson for plaintiffs and the class. This is a case where no one rationally wants class certification denied. Members of the class don't want to have to individually prove the common issues. Defendant doesn't want its senior officials to have to testify at a hundred or more trials. And it certainly doesn't want to pay counsel to try a hundred or more cases. But most importantly, the district court does not want to have its docket overburdened by a hundred or more trials in this case on the same common issues. Now, NYU would like to turn this appeal into a case about educational malpractice and why this court should take this appeal. The shortest answer here is they didn't raise that on class certification below. It's waived. The longer answer is this is not an educational malpractice claim. If you look at the common issues that the court identified in its order on certification, it identified whether NYU has a special relationship with TISH-Asia students, whether NYU had an intent to defraud TISH-Asia students, whether NYU, by allegedly misrepresenting the true state of TISH-Asia, intended to induce reliance in TISH-Asia students, and whether NYU failed to impart to TISH-Asia students that TISH was unviable. Those are not educational malpractice issues. And the longest answer is if they thought they had the winning hand on that issue, they would stipulate to the class and go win on it below. But they haven't done that. The ‑‑ How could you ever determine that everybody relied on the same promise in this type of setting? Students go to a school for different types of reasons. So isn't this just on its face set up in such a way that you couldn't possibly have a class? Each student goes for different reasons, right? You'd have to question each student, why did you come to this school? What did you rely on? Right? Or am I missing something? Well, I wouldn't suggest you're missing something. But the question here is whether a student would have attended NYU TISH-Asia if the omitted material information was disclosed. So in other words, if students knew that this TISH-Asia program was an experiment, if they knew that this program didn't have the support of the administration, if they knew that this was not financially viable from day one. On a class‑wide basis, that's an individualized determination that each student makes depending upon their circumstances, what country they're in, what made a difference to them, right? Well, Judge Marrero was presented with that very question. And in his discretion, he determined that it would be preferable to resolve the common issues on a class‑wide basis. Now, if NYU wants to argue to the jury that students would have attended if they knew the truth, they are permitted to do that. And if students are required to come in and say, no, I wouldn't have attended if I knew the truth like the three class representatives here and their declarations in support of class certification, then that is a fairly straightforward process and could be done in connection with their damages issues if those prove to be individual. And they may not be. The jury may find that all the money should be returned because of misrepresentations. You have a particular statement that you could say all students received in that was false or is it all different types of representations made in different ways? Well, students had different experiences at NYU Tisch Asia. The statements made to them, particularly the statements about the education and the whole experience being the same in NYU, New York and NYU Asia, those are uniform material misrepresentations. Where is there material that said this is the same as Tisch New York? There's a written material that says this is the same as Tisch New York? I am paraphrasing, but yes, and it is in our papers. It was on the website. It was in the brochures. It was in letters to the students, I believe. But that information is all in the record. The real question here is whether this is an abuse of discretion, whether we allow district courts to decide how they're going to run their cases. Judge Marrero stated the court notes that the relevant question is not whether the class action is the only way to adjudicate the proposed class member's claims, but whether it's the best available option. The court finds it would be suboptimal to litigate in potentially hundreds of cases the common questions at issue in this case. This hardly sounds like an abuse of discretion. Thank you. Thank you very much. We'll reserve decision, and we'll turn to the day calendar. And the first case we'll hear is Jones against Chauvet. Go ahead, sir. May it please the court, Amir Ali of the MacArthur Justice Center for the Appellant Matthew Jones. Your Honors, our position in this appeal is a narrow one, that Defendant Trubig failed to satisfy his burden under the procedure that this court has adopted to set aside a jury verdict based on qualified immunity. In Kerman, in Zellner, in Outlaw, the court recognized that a jury's verdict as to excessive force necessarily turns on the jury's view as to what a reasonable officer would have perceived in the circumstances. Respect for the jury verdict and for the plaintiff's Seventh Amendment right precludes a court from substituting its view of what a reasonable officer would have perceived for the jury's view. And therefore, when a defendant seeks to set aside the verdict based on that burden to submit the necessary questions to the jury and to establish that the jury viewed the facts as he says it did, where the defendant fails to submit the relevant questions to the jury, the court must view the fact in the best possible way for the plaintiff. So I want to focus the court specifically on the second tasing in this case because we see that as the narrowest ground for reversal that prevents the court from having to deal with any of the other two issues we raise, dealing with the first tasing and with the inconsistency with punitive damages. So let me begin with three premises because I think these will really help focus the court and narrow the issue here. First, everybody appears to agree that it violates clearly established law to inflict gratuitous force against someone who has already been incapacitated. Second, Defendant Trubig has never contested that the jury could have concluded, based on the evidence before it, that Mr. Jones was incapacitated and that its verdict could be based on the fact that a reasonable officer in the circumstances would have known he was incapacitated. And third, Defendant Trubig does not even argue that his interrogatories established that Mr. Jones was not subdued at the time of the second tasing. That — I think they're going to argue that it's uncontroverted that he was uncuffed at the time of the second tase and that that means that he's not subdued. So why don't you respond to that argument? It's uncontroverted, right? Even though there wasn't an interrogatory, it's uncontroverted he was not cuffed at the time of the second tase. So, Your Honor, that's correct. A couple of responses. First of all, on the law, and second, the kind of perverse consequences of such an argument, and then third, I can talk about the specific facts here. But first, on the law, the court in Soto considered the question of whether Tracy decided before the events in this case clearly established a violation where officers tased a man who had just been tased. And in that instance, not only was he not handcuffed, but the court viewed subdued in a much more kind of logical way than is the person handcuffed. In that case, in fact, the individual, it was uncontested, was starting to rise to his feet. In this case, it is — there was no evidence that at the time of the second tase Mr. Jones was doing anything but laying flat on the floor, probably still writhing from the first tase, to borrow the language of the Eighth Circuit. When the district court noted that in its opinion, I think several times, that was just incorrect. At the time of this, right before the second tase, after the first tase, he was writhing.